215 So.2d 414 (1968)
Mike MARTINSON, The Richland Company, Frank M. Martinson and Mrs. Frank M. Martinson
v.
CITY OF JACKSON and McClelland Taylor.
No. 45041.
Supreme Court of Mississippi.
November 11, 1968.
*415 Charles E. Hughes, Binder, Bush & Selph, Jackson, for appellants.
E.W. Stennett, Val Surgis, Creekmore & Beacham, Jackson, for appellees.
JONES, Justice.
This is an appeal from the action of the municipal authorities in rezoning certain property from its classification under the General Zoning Ordinance adopted June 1, 1950.
On February 3, 1967, appellee Taylor filed with the City Zoning Department a petition to rezone the property from A-2 to A-1. There were also presented several separate typewritten petitions signed by a number of persons owning property within the area, requesting such a change. Each of such typewritten petitions contained this paragraph:
4. Petitioners are not advised as to the circumstances under which this property was previously zoned as A-2, but they would show that such zoning was manifestly done under a mistake as to the true facts respecting the nature and character and the uses to which it then was being, and thereafter would be put, and this mistake should now be corrected.
This original petition was on a form presumably prepared by the city.
The minutes of the meeting of the Zoning Committee, where these petitions were considered, appear in the record and contain the following:
Present for this case was the Attorney for petitioners, Rufus Creekmore. Also present were a large number of persons in favor of this request and whose names and addresses are on file with the case.
Rufus Creekmore explained to the Committee that this property in question was zoned A-2 Residential in 1950 and they do not know the reasons for the Council zoning this property A-2 Residential, but the residents of this area feel that it was a mistake, since the character of the neighborhood has not changed since this time, and it is their opinion this property should be zoned A-1 Residential, the same zoning that exists across the streets from subject property and in the general area. Several of the residents in the area stated their reasons as to why they are requesting this zoning change. (emphasis added).
Also the minutes show:

Ellis Wright told the Committtee he has been in this area for 7 years and he was surprised that it was zoned A-2 Residential, as the character of the neighborhood has not changed and the zoning should be the same on both sides of the street. (emphasis added).
Several other witnesses concurred in the statement of Mr. Wright and no one controverted it.
The minutes show that the Committee's recommendation was:
It is the recommendation of the Zoning Committee to the City Council that this request for rezoning be approved for rezoning to A-1 Residential, as it is the Committee's opinion this is one of the City's oldest and most attractive, well preserved first class residential areas and should remain as such.
The consulting engineer made his recommendation to the Director of the Zoning *416 Department, the last paragraph of which reads:
This sector is in the midst of an area that is zoned A-1 Residential. The area in its entirety is developed with high quality, single family homes that deserve the protection of the highest degree of residential zoning provided in the city's present ordinance. While I am not familiar with the circumstances leading to the present A-2 zoning in this particular area, I do feel that A-1 zoning is proper, and recommend that the petitioners' request for rezoning be approved.
Parenthetically, it may be said here the engineer's statement that the area in its entirety was composed of single family homes was shown to be erroneous by pictures taken in the area disclosing duplexes, garage apartments, three-unit constructions, and houses for four families. These pictures were taken two days before the hearing and were introduced without objection.
An A-1 classification does not allow for a dwelling which is larger than a two-family residence. Classification A-2, however, permits all constructions authorized by A-1, and additionally, apartments or multiple-family dwellings, with certain limitations as to the area therefor with front and side yard requirements.
Before the City Council, Mr. Martinson, appellant, testified that he and the other appellants:
[P]roposed to build on their land a luxury type, New Orleans, French Quarter style town house consisting of 10 apartments and explained that in reliance upon the existing Residential A-2 zoning they had made certain expenditures, the amount of which was not shown; and that they had, on the day of the hearing before the City Council, filed with the Engineering and Permit Department of the City a request for a building permit on Lots 4, 5, and 6, Pinehurst Place Subdivision, filing with the application the plans and specifications for a certain apartment house complex which they were presently building close by, in the Belhaven area of Jackson. And he then presented the plans, drawings and elevations of the project presently being constructed by him and his associates elsewhere as aforesaid, so as to demonstrate the type of structure and caliber of the project which he proposed.
The permit was not granted.
Proponents of the change testified that when the general zoning ordinance was adopted in 1950 the area involved was similar to surrounding or adjacent areas classified A-1 and concluded therefrom that there was "manifestly" an error or mistake in zoning the subject property as A-2.
There was no proof that such an error or mistake was made in the original zoning but proponents rested on the conclusion that it must have been a mistake.
We cannot know the reason for such zoning but since the area is in the immediate vicinity of Belhaven College can surmise as to the reason. However, the officials so zoning cannot be presumed to have made a mistake; the presumption is to the contrary. The aforesaid evidence would not overcome this presumption of correctness, and, as stated, was merely a conclusion.
There was no proof of error or mistake and the City Council did not find error or mistake.
As to changes in use or character of the area, all that appears from the record is:
It was further shown by the testimony of numerous of the petitioners that while, since 1950, there have been some changes in the uses to which some of the property located in the affected area presently zoned A-2 has been put, and while there have been some changes in the immediate adjacent area presently zoned A-1, yet the changes in each area, in so far as *417 the uses and purposes to which the property was being put, were of substantially the same nature and character in each area; and down to, and at the present time, the properties in the affected area and in the immediate adjacent area have been, and are now being devoted to substantially the same uses and purposes.
These were certainly not such changes in use as would alter the character of the area. The direct proof of witnesses heretofore quoted was that the character of the area had not changed. At the beginning of the hearing before the Committee, the attorney for the proponents stated positively there had been no change. On this proof the City Council changed the zoning to A-1, denying appellants' right to use the property as authorized by its original zoning.
The ordinance effectuating rezoning was based on the following findings by the Council:
[T]he Council finds that the property lying immediately to the North and immediately to the South of said area is zoned A-1 residential and has been all along; that the area is situated in one of Jackson's most highly developed residential districts, and that it should be maintained as such; that conditions have changed and are changing since the original zoning in that efforts are being made to bring about apartment development in the highly residential area; that the best interest of the property owners and of the City of Jackson requires the said area to be rezoned and maintained for A-1 residential uses and purposes. * * (emphasis added.)
There was no proof, either as to mistake or change of character of the neighborhood, and the Council, to justify its order, could only point to the fact that appellants desired to use their property as the ordinance, sought to be changed, authorized.
There was no evidence or charge of confiscation.
Mississippi has by more than one decision declared the law to be substantially as is succinctly stated by the Maryland Court in Kroen v. Board of Zoning Appeals of Baltimore County, 209 Md. 420, 426, 121 A.2d 181, 184 (1956), as follows:
It is a basic rule in the law of zoning that where a board of city or county officials, under authority conferred by the Legislature, has enacted a zoning ordinance, judicial review of action taken by the board is restricted and narrow in scope. An attack upon a zoning ordinance, to be successful, must show affirmatively and clearly that it is arbitrary, capricious, discriminatory, or illegal. The presumption of reasonableness and constitutional validity applies to rezoning as well as to original zoning. The courts presume that the original zoning is well planned and designed to be permanent. Accordingly it is a firmly established rule that before a zoning board reclassifies property from one zone to another, there should be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification. Wakefield v. Kraft, 202 Md. 136, 96 A.2d 27; American Oil Co. v. Miller, 204 Md. 32, 102 A.2d 727; Temmink v. Board of Zoning Appeals of Baltimore County, 205 Md. 489, 109 A.2d 85.
In the instant case there was no evidence to show that the original zoning was erroneous. Likewise, the evidence failed to establish that since the adoption of the zoning map there had been any such change in the character of the neighborhood as to justify a reclassification.
* * *
On an appeal from an order of a zoning board, it is not the function or the right of the reviewing court to zone or rezone, but only to decide whether the board's action was arbitrary, capricious, discriminatory, or illegal. Whatever may be the personal opinion of the court on *418 zoning, the law is settled that in an appeal from a decision of a zoning board, the court cannot substitute its own judgment as to the wisdom or the soundness of the board's action. (emphasis added).
Our Court in City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962), held as follows:
1. Before rezoning, it must be shown that there was some mistake in the original zoning or that conditions in the neighborhood have changed so as to warrant rezoning.
2. An organized neighborhood desire for rezoning, without more, is insufficient to justify rezoning.
3. The determination of zoning authorities that there has been a change of conditions to warrant rezoning will not be disturbed if the question is fairly debatable.
4. Aesthetic conditions alone do not justify zoning regulations; and where such regulations are designed merely to preserve the appearance of a designated neighborhood, they are invalid.
5. There must be a positive showing of physical, economic or social change rather than aesthetic or group caprice to justify the release of zoning regulations.
6. The petitioners had the burden of proving a public need for the change * * they offered no evidence of new or additional facts or other considerations materially affecting the merits which had intervened since the original zoning * * * on August 8, 1958.
7. The evidence failed to show a mistake in the original zoning.
In Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 504-506, 176 So.2d 267, 271 (1965), it was held:
The Council was correct in holding that the burden of proof was upon appellant to allege and prove a material change of circumstances.
* * * * * *
As to whether the action of the Council was confiscatory, the burden of proof was upon appellant to show that there had been a change of conditions since the previous orders of the Council that would make the action of the Council * * * confiscatory. The only change of conditions shown is that * * * appellant has made diligent efforts to sell its property for purposes other than a filling station site, and has been unable to do so.
This was held insufficient to show the action confiscatory and that case was affirmed.
In the instant case there was no allegation, no proof, and no finding of confiscation.
We cannot conceive that a proposed use of the property in accordance with its classification would constitute such a material change as to meet the legal requirements, or that such question would be fairly debatable.
Illustrative of a material change is Nelson v. County Council for Montgomery County, 214 Md. 587, 136 A.2d 373 (1957). Certain properties in the area sought to be rezoned had been changed from multiple-family residences, one to commercial office buildings, and one to general commercial; further an electric power substation had been erected in one section of the property and a public paved parking lot in another portion. The Court held this was evidence from which the Council could find the character of the neighborhood had changed to the extent that the rezoning should be granted. This is cited merely as illustrative. Each case would depend on its own facts and this Court would not necessarily require as drastic changes as in the Nelson case.
There being no proof of mistake, change, or confiscation, we are unable to *419 find any support for the Council's action in rezoning.
The case is therefore reversed, and the petitions for change of classification are denied and dismissed.
Reversed and petitions for change of classification are denied and dismissed.
ETHRIDGE, C.J., and BRADY, INZER and ROBERTSON, JJ., concur.